No. 12157

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

THE STATE OF MONTANA, ACTING BY AND
THROUGH THE STATE HIGHWAY COMMISSION
OF THE STATE OF MONTANA,

        Plaintiff and Respondent,

-vs-

JOHN PARINI et al.,

        Defendants and Appellants.

---

Appeal from:  District Court of the Fifth Judicial District,
           Honorable Frank E. Blair, Judge presiding.

Counsel of Record:

    For Appellants:

        Corette, Smith and Dean, Butte, Montana.
        R. D. Corette, Jr. argued, Butte, Montana.

    For Respondent:

        Harry Alley and Frank Meglen argued, Helena, Montana.

---

Submitted:     March 14, 1972

Decided: MAY 10 1972

Filed: MAY 10 1972

*Thomas J. Kearney*
                Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal by defendant property owners in a condemnation action involving the acquisition of land for the construction of an interstate highway in the Vicinity of Elk Park, north of Butte, Montana. Following a "necessity" hearing the district court of the fifth judicial district, county of Jefferson, Hon. Frank E. Blair presiding, entered a "Preliminary Order of Condemnation" condemning defendants' land to a public use and declaring such condemnation necessary for such public use.

Plaintiff is the state of Montana, acting through the State Highway Commission. Plaintiff seeks to condemn and acquire a 54.4 acre strip of defendants' land located in two noncontiguous parcels, designated parcel 11 and parcel 15. This strip of land is to be used for the construction of a four lane controlled access interstate highway between Butte and Helena.

Defendants own and operate a 634.5 acre dairy farm which is divided into three noncontiguous parcels. Parcel 15 is known as the home place where all the buildings are located, including the house and barn. At the present time, parcel 15 is bisected by the Burlington Northern railroad tracks and the existing primary highway, U.S. Highway 91, both of which run in a north-south direction. The buildings are located east of the highway and tracks; on the west side the land is devoted to hay production and pasture. It is defendants' uncontested contention that in the operation of their farm they are required to cross and re-cross the existing highway and railroad tracks twice a day for ten months of the year, either with their cows or with a manure spreader in the winter time. They further contend that access from the home place to the west portion of parcel 15 is absolutely necessary for the continued operation of their farm.

Under the proposal approved by the district court, the State Highway Commission would condemn a 29.7 acre strip of land which would bisect parcel 15 in a north-south direction and abut and parallel the existing highway. All of the buildings on parcel 15 would be destroyed or removed. No access would be provided from the east portion of parcel 15 across the interstate to the west portion of parcel 15. However, the State Highway Commission does propose to construct frontage roads on both the east and west sides of the interstate with an interchange at Trask, one and one-half miles south of defendants' farm.

During the hearing and on appeal, the only issue raised by the defendants is the failure of the State Highway Commission to propose construction of a "tube" or stockpass under the interstate so as to allow them and their cattle access from the east portion of parcel 15 to the west portion. Defendants contend, without contradiction, that it would be fruitless to drive their cows from the west pasture to the home place for milking via the Trask interchange because milk cows cannot be driven any real distance without a loss of milk. Therefore, they contend, a "tube" or stockpass under the proposed interstate highway is necessary for the continued profitable operation of their dairy farm.

The State Highway Commission introduced as Exhibit "A" an appraiser's report of the value of defendants' farm. This report indicated the present market value of the farm is $114,000. No evidence was offered by defendants to rebut or refute the exhibit. There was also testimony elicited from a district engineer for the State Highway Commission to the effect that the estimated cost of constructing a "tube" or stockpass would be in the neighborhood of $200,000. The engineer pointed out that no study has been made as to the feasibility of putting in such

- 3 -

a "tube" or stockpass and that the $200,000 figure was merely an estimate on his part. However, he went on to give facts and figures on elevation, the costs of fill and the distance of hauls that make his estimate more than just speculation.

The single issue presented for review is whether the district court abused its discretion in ordering the condemnation of defendants' land without providing for a "tube" or stockpass as a means of access from the east portion of defendants' farm to the west portion.

It is undisputed that the State Highway Commission has the authority to condemn private property to facilitate the construction of state and federal highway systems. Sections 32-3902, 32-3904(1), 93-9902, R.C.M. 1947. However, prior to instituting condemnation proceedings section 32-3904(2), R.C.M. 1947, requires the Commission to adopt a resolution declaring that public interest and necessity requires such condemnation. Once the Commission has adopted the resolution, section 32-3904(3), R.C.M. 1947, creates a disputable presumption:

"(a) Of the public necessity of the proposed highway or improvement.

"(b) That the taking of the interest sought is necessary therefor.

"(c) That the proposed highway or improvement is planned or located in a manner which will be most compatible with the greatest public good and the least private injury."

In their answer to the complaint, defendants prayed:

"That the Court deny public necessity to Plaintiff until and unless Plaintiff provides access to the Defendants' lands lying west of the proposed interstate highway."

It appears defendants would have the district court approve the necessity of condemning their land conditioned upon the plaintiff providing access. "Necessity" in a condemnation action is an independent element that must be determined on its own merits. At the hearing there was no evidence offered by defendants to

- 4 -

refute the "disputable presumption" of section 32-3904(3), R.C.M. 1947, that the condemnation of defendants' land was necessary for the construction of the proposed interstate highway. Therefore, the order of the district court must stand. That order decreed:

> "* * * the use to which the plaintiff seeks to apply the property of the defendants is a necessary public use authorized by law; and that the public interests require the taking of said property."

Defendants appear to concede that the condemnation of their lands is necessary within the meaning of section 32-3904(3)(b), R.C.M. 1947, but they would require plaintiff to construct an underpass under the proposed interstate highway for their sole use in the operation of their dairy farm.

There is a failure of proof on the part of defendants as to what their liquidated damages would be if such an underpass were not constructed. However, such failure of proof is not critical to defendants' case at this stage of the proceedings because they are still entitled to another day in court to establish their damages under the provisions of section 93-9915, R.C.M. 1947, (Appeal from assessment of commissioners).

Defendants cite State Hwy. Comm'n v. Lavoie, 155 Mont. 39, 466 P.2d 594, for the proposition that the state has a duty and obligation to provide an underpass for a private property owner. Such is not the case. In Lavoie, an underpass was constructed under the interstate, but not only did it benefit the defendant, Lavoie, but also the public in general as that underpass connected an existing county road and was the only proposed means of access between the north and south sides of the interstate in the Frenchtown valley.

For the foregoing reasons we affirm the decision of the district court.

_____
Associate Justice

- 5 -

We Concur:

_James T. Harrison_  
Chief Justice

_Frank I. Haswell_

_Gene B. Daly_

_Wesley Castles_  
Associate Justices.